**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

|  |  |
|---|---|
| **TRANSCEND SHIPPING SYSTEMS, LLC,**<br>*Plaintiff,*<br><br>v.<br><br>**J.B. HUNT TRANSPORT SERVICES,**<br>**INC. AND J.B. HUNT TRANSPORT,**<br>**INC.,**<br>*Defendants.* | **Case No. 6:21-cv-** 497<br><br>**JURY TRIAL DEMANDED** |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Transcend Shipping Systems, LLC ("Transcend") hereby files this Original Complaint for Patent Infringement against J.B. Hunt Transport Services, Inc. and J.B. Hunt Transport, Inc. (collectively "Defendants" and "JBH"), and alleges, upon information and belief, as follows:

### THE PARTIES

1.  Transcend is a limited liability company organized and existing under the laws of the State of Florida with its principal place of business at 600 S. Dixie Highway, Suite 605, West Palm Beach, Florida 33401.

2.  Upon information and belief, J.B. Hunt Transport Services, Inc. is a corporation organized and existing under the laws of the state of Arkansas with its principal office at 615 J.B. Hunt Corporate Drive, Lowell, AR 72745. Upon information and belief, J.B. Hunt Transport, Inc. is a corporation organized and existing under the laws of the state of Georgia with its principal office at P.O. Box 130, Lowell, AR 72745, and is a wholly owned subsidiary of J.B. Hunt Transport Services, Inc..

## JURISDICTION AND VENUE

3.      Subject matter jurisdiction is proper under 28 U.S.C. §§ 1331, 1332, 1338, and 1367.

4.      The Court has personal jurisdiction under the Texas Long Arm Statute and the Due Process Clause of the U.S. Constitution over JBH because they are present within or have minimum contacts within the State of Texas, including the Western District of Texas.

5.      JBH has sought protection and benefit from the laws of the State of Texas; JBH regularly conducts business within the State of Texas and within the Western District of Texas; and Plaintiff's cause of action arises directly from JBH's business contacts and other activities in the State of Texas and in the Western District of Texas. More specifically, JBH, directly and/or through intermediaries, ship, distribute, use, offer for sale, sell, and/or advertise products and services in the United States, the State of Texas, and the Western District of Texas including but not limited to the Accused Instrumentalities as detailed below. Upon information and belief, JBH has committed patent infringement in the State of Texas and in the Western District of Texas. JBH solicits and has solicited customers in the State of Texas and in the Western District of Texas. JBH has paying customers, who are residents of the State of Texas and the Western District of Texas, who each use and have used the JBH's products and services in the State of Texas and in the Western District of Texas.

6.      As an example, JHB is actively recruiting for multiple positions located throughout Texas, including in this District (*See* Figures 1-4 below).



Figure 1[1]



Figure 2[2]

---

[1] Source, as visited on March 12, 2021:  https://www.jbhunt.com/jobs/office/job_search/

[2] Source, as visited on March 12, 2021:  https://www.jbhunt.com/jobs/office/job_search/



Figure 3[3]



Figure 4[4]

---

[3] Source, as visited on March 12, 2021:  https://www.jbhunt.com/jobs/office/job_search/

[4] Source, as visited on March 12, 2021:  https://www.jbhunt.com/jobs/office/job_search/

7.      Upon information and belief, the registered agent for J.B. Hunt Transport, Inc. in Texas is Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company at 211 E. 7th Street, Suite 620, Austin, Texas 78701-3136.

8.      Venue is proper pursuant to 28 U.S.C. §§ 1391 and 1400(b).

9.      Venue is also proper in this judicial district pursuant to 28 U.S.C. §§ 1391(c)(3) because Defendant Mediterranean Shipping Company S.A. is not a resident of the United States and therefore may be sued in any judicial district.

## PATENTS-IN-SUIT

10.     Transcend Shipping Systems, LLC is the sole and exclusive owner, by assignment, of U.S. Patent Nos. 7,253,731 ("the '731 Patent"); 7,482,920 ("the '920 Patent"); 9,847,029 ("the '029 Patent"); 10,181,109 ("the '109 Patent"); and 10,796,268 ("the '268 Patent") (hereinafter collectively referred to as "the Transcend Patents").

11.     The Transcend Patents are valid, enforceable, and were duly issued in full compliance with Title 35 of the United States Code.

12.     The Transcend Patents each include numerous claims defining distinct inventions.

13.     The priority date of each of the Transcend Patents is at least as early January 23, 2001. As of the priority date, the inventions as claimed were novel, non-obvious, unconventional, and non-routine.

14.     Plaintiff alleges infringement on the part of JBH of each of the Transcend Patents.

15.     The '731 Patent relates generally to an apparatus, including a shipment conveyance device, associated with a shipment, which is a shipping a container, pallet, or tote, a memory device, located at the shipment conveyance device, in which information regarding the shipment is stored, a global positioning device, located at the shipment conveyance device, which determines a position or

location of the shipment conveyance device, a processing device which processes information regarding the shipment and/or shipment conveyance device in response to an occurrence of an event or in response to a request for information and generates a message containing information regarding the position or location of the shipment conveyance device and information regarding the occurrence of an event, a status of the shipment, a shipment temperature, or an impact or force on the shipment conveyance device, and a transmitter, located at the shipment conveyance device, which transmits the message to a communication device. *See* Abstract, '731 Patent.

16.   The '920 Patent relates generally to an apparatus, including a shipment conveyance device which is a shipping container, pallet, piece of luggage, or tote, a memory device located in, on, or at, the shipment conveyance device which stores information regarding the shipment conveyance device, a global positioning device located in, on, or at, the shipment conveyance device which determines a position or location of the shipment conveyance device, a processing device which processes information regarding the shipment conveyance device in response to an occurrence of an event or a request for information and which generates a message containing information regarding the position or location of the shipment conveyance device and information regarding the occurrence of an event, a status of a shipment or transportation involving the shipment conveyance device, a temperature, or an impact or force on the shipment conveyance device, and a transmitter located in, on, or at, the shipment conveyance device which transmits the message to a communication device. *See* Abstract, '920 Patent.

17.   The '029 Patent relates generally to an apparatus, including a shipment conveyance device which is a shipping container, pallet, or piece of luggage, a memory device located in, on, or at, the shipment conveyance device which stores information regarding the shipment conveyance device, a global positioning device which determines a position or location of the shipment conveyance device, a

processing device which processes information regarding the shipment conveyance device in response to an occurrence of an event or a request for information and which generates a message containing information regarding the position or location of the shipment conveyance device and information regarding the occurrence of an event, a status of a shipment or transportation involving the shipment conveyance device, a temperature, or an impact or force on the shipment conveyance device, and a transmitter located in, on, or at, the shipment conveyance device which transmits the message to a communication device. *See* Abstract, '029 Patent.

18.     The '109 Patent relates generally to an apparatus, including a shipment conveyance device, wherein the shipment conveyance device is a shipping container, pallet, or piece of luggage; a receiver; a global positioning device which is located in, on, or at, the shipment conveyance device and which determines a position or location of the shipment conveyance device; a processor which generates a message in response to an occurrence of an event or in response to a request for information regarding the shipment conveyance device, wherein the request for information is automatically received by the receiver, wherein the message contains information regarding a position or location of the shipment conveyance device; and a transmitter which is located in, on, or at, the shipment conveyance device and which transmits the message to a communication device associated with an owner of the shipment conveyance device or an individual authorized to receive the message. *See* Abstract, '109 Patent.

19.     The '268 Patent relates generally to an apparatus, including a shipment conveyance device which is a shipping container, a pallet, or a piece of luggage; a global positioning device, located in, on, or at, the shipment conveyance device, which determines a position or location of the shipment conveyance device; a processor which generates a message in response to an occurrence of an event or in response to a request for information regarding the shipment conveyance device which request

is automatically received by a receiver, and which message contains information regarding a shipment of the shipment conveyance device; and a transmitter, located in, on, or at, the shipment conveyance device, which transmits the message to a communication device associated with an owner of the shipment conveyance device or an individual authorized to receive the message. *See* Abstract, '268 Patent.

20.    The claims of the Transcend Patents are not drawn to laws of nature, natural phenomena, or abstract ideas.  Although the systems and methods claimed in the Transcend Patents are ubiquitous now (and, as a result, are widely infringed), the specific combinations of elements, as recited in the claims, was not conventional or routine at the time of the invention.

21.    The '731 Patent was examined by Primary United States Patent Examiner Van T. Trieu.  During the examination of the '731 Patent, the United States Patent Examiner searched for prior art in the following US Classifications: 340/539.13, 340/568.1 and 340/572.1.

22.    After conducting searches for prior art during the examination of the '731 Patent, the United States Patent Examiner identified and cited the following as the most relevant prior art references found during the searches: (i) US 3,669,288, 06/1972, Young; (ii) US 5,317,323, 05/1994, Kennedy et al.; (iii) "Envirokare announces letter of intent with Electroship . . ." 2 page Envirokare press release dated Jul. 25, 2000"; (iv) US 5,825,283, 10/1998, Camhi; (v)  US 6,044,990, 04/2000, Palmeri; (vi) US 6,464,142, 10/2002, Denenberg et al.; (vii) US 2002/0017996, 02/2002, Niemiec; (viii) FR 2816434, 05/2002, Touzet; (ix) US 5,877,707, 03/1999, Kowalick; (x) US 5,917,405, 06/1999, Joao; (xi) US 5,917,434, 06/1999, Murphy; (xii) US 6,046,678, 04/2000, Wilk; (xiii) US 6,148,291, 11/2000, Radican; (xiv) US 6,281,797, 08/2001, Forster et al.; (xv) US 6,292,828, 09/2001, Williams; (xvi) US 6,332,098, 12/2001, Ross et al.; (xviii) US 6,474,927, 11/2002, McAdams et al.; (xix) US 6,542,076, 04/2003, Joao; (xx) US 6,542,077, 04/2003, Joao; (xxi) US 6,549,130, 04/2003,

Joao; (xxii) US 6,587,046, 07/2003, Joao; (xxiii) US 6,610,954, 08/2003, Takizawa; (xxiv) US 6,844,473, 01/2005, Quinlin et al.; (xxv) US 2002/0016655, 02/2002, Joao; (xxvi) US 2002/0049622, 04/2002, Lettich et al.; (xxvi) US 2002/0049622, 04/2002, Lettich et al.; (xxvii) US 2002/0116318, 08/2002, Thomas et al.; (xxviii) US 2002/0121969, 09/2002, Joao; (xxix) US 2002/0198774, 12/2002, Weirich; (xxx) US 2003/0009361, 01/2003, Hancock et al.; (xxxi) US 2003/0016130, 01/2003, Joao; (xxxii) US 2003/0067541, 04/2003, Joao; (xxxiii) US 2003/0071899, 04/2003, Joao; (xxxiv) US 2003/0084125, 05/2003, Nagda et al.; (xxxv) US 2003/0193404, 10/2003, Joao; (xxxvi) US 2003/0206102, 11/2003, Joao; (xxxvii) US 2004/0160319, 08/2004, Joao; (xxxviii) US 2004/0230601, 11/2004, Joao; (xxxix) US 2005/0171835, 08/2005, Mook et al.; (xxxx) US 2005/0248444, 11/2005, Joao; (xxxxi) "Technology Executive . . . joins Envirokare as president and Director", 2 page Envirokare press release dated Sep. 5, 2000; and (xxxxii) "Envirokare Tech Inc. announces additions to advisory board", 3 page Envirokare press release dated Sep. 7, 2000.

23.    After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiner allowed all of the claims of the '731 Patent to issue.  In so doing, it is presumed that Examiner Trieu used his or her knowledge of the art when examining the claims.  *K/S Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014).  It is further presumed that Examiner Trieu has experience in the field of the invention, and that the Examiner properly acted in accordance with a person of ordinary skill.  *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002).

24.    The '731 Patent is a pioneering patent, and has been cited as relevant prior art in over 130 subsequent United States Patent Applications, including Applications assigned to technology and business leaders such as Google, Inc., AT&T, FedEx, Qualcomm, Inc., Fujitsu, Ltd., United Parcel Services of America, American Airlines and NEC Corp.

25.     The '920 Patent was examined by Primary United States Patent Examiner Van T. Trieu.  During the examination of the '920 Patent, the United States Patent Examiner searched for prior art in the following US Classifications: 340/539.11, 340/568.1 and 340/572.1.

26.     After conducting searches for prior art during the examination of the '731 Patent, the United States Patent Examiner identified and cited the following as the most relevant prior art references found during the searches: (i) US 5,825,283, 10/1998, Camhi; (ii)  US 6,046,678, 04/2000, Wilk; (iii) US 6,148,291, 11/2000, Radican; (iv) US 6,323,782, 11/2001, Stephens et al.; (v) US 6,429,810, 08/2002, De Roche; (vi) US 6,610,954, 08/2003, Takizawa; (vii) US 6,745,027, 06/2004, Twitchell, Jr.; and (viii) US 6,882,269, 04/2005, Moreno.

27.     After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiner allowed all of the claims of the '920 Patent to issue.  In so doing, it is presumed that Examiner Trieu used his or her knowledge of the art when examining the claims.  *K/S Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014).  It is further presumed that Examiner Trieu has experience in the field of the invention, and that the Examiner properly acted in accordance with a person of ordinary skill.  *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002).

28.     The '920 Patent is a pioneering patent, and has been cited as relevant prior art in over 130 subsequent United States Patent Applications, including Applications assigned to technology and business leaders such as Google, Inc., AT&T, FedEx, Qualcomm, Inc., Fujitsu, Ltd., United Parcel Services of America, American Airlines and NEC Corp.

29.     The '029 Patent was examined by Primary United States Patent Examiner Van T. Trieu.  During the examination of the '029 Patent, the United States Patent Examiner searched for prior art in the

following US Classifications: G08G 1/20, G01S 13/84, G06Q 10/08, G06Q 10/087, G08B 1/08, G08G 1/202, G08G 1/205, H04W 4/02, and H04W 4/021.

30.   After conducting searches for prior art during the examination of the '029 Patent, the United States Patent Examiner identified and cited the following as the most relevant prior art references found during the searches: (i) US 5,640,002, 06/1997, Ruppert et al.; (ii) US 5,825,283, 10/1998, Camhi; (iii)  US 5,959,568, 09/1999, Woolley; (iv) US 6,046,678, 04/2000, Wilk; (v) US 6,148,291, 11/2000, Radican; (vi) US 6,281,797, 08/2001, Forster et al.; (vii) US 6,304,856, 10/2001, Soga; (viii) US 6,356,802, 03/2002, Takehara; (ix) US 6,411,891, 06/2002, Jones; (x) US 6,429,810, 08/2002, De Roche; (xi) US 6,610,954, 08/2003, Takizawa; (xii) US 6,745,027, 06/2004, Twitchell, Jr.; (xiii) US 6,748,318, 06/2004, Jones; (xix) US 6,859,722, 02/2005, Jones; (xx) US 6,882,269, 04/2005, Moreno; (xxi) US 6,904,359, 06/2005, Jones; (xxii) US 7,035,856, 04/2006, Morimoto; (xxiii) US 7,085,775, 08/2006, Short et al.; (xxiv) US 7,212,829, 05/2007, Lau et al.; (xxv) US 2002/0046173, 04/2002, Kelly; (xxvi) US 2002/0061758, 05/2002, Zarlengo et al.; (xxvii) US 2002/0120475, 08/2002, Morimoto; and (xxviii) US 2002/0132855, 07/2003, Swan.

31.   After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiner allowed all of the claims of the '029 Patent to issue.  In so doing, it is presumed that Examiner Trieu used his or her knowledge of the art when examining the claims.  *K/S Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014).  It is further presumed that Examiner Trieu has experience in the field of the invention, and that the Examiner properly acted in accordance with a person of ordinary skill.  *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002).

32.   The '029 Patent is a pioneering patent, and has been cited as relevant prior art in over 130 subsequent United States Patent Applications, including Applications assigned to technology and

business leaders such as Google, Inc., AT&T, FedEx, Qualcomm, Inc., Fujitsu, Ltd., United Parcel Services of America, American Airlines and NEC Corp.

33. The '109 Patent was examined by Primary United States Patent Examiner Van T. Trieu.  During the examination of the '109 Patent, the United States Patent Examiner searched for prior art in the following US Classifications: G06Q 10/08, G06Q 10/083, G06Q 10/087, H04W 4/02, and H04W 4/021.

34. After conducting searches for prior art during the examination of the '109 Patent, the United States Patent Examiner identified and cited the following as the most relevant prior art references found during the searches: (i) US 5,959,568, 09/1999, Woolley; (ii) US 7,035,856, 04/2006, Morimoto; (iii) US 7,212,829, 05/2007, Lau et al.; (iv) US 7,253,731, 08/2007, Joao; (v) US 9,847,029, 12/2017, Joao; and (vi) US 2002/0120475, 08/2002, Morimoto.

35. After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiner allowed all of the claims of the '109 Patent to issue.  In so doing, it is presumed that Examiner Trieu used his or her knowledge of the art when examining the claims.  *K/S Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014).  It is further presumed that Examiner Trieu has experience in the field of the invention, and that the Examiner properly acted in accordance with a person of ordinary skill.  *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002).

36. The '109 Patent is a pioneering patent, and has been cited as relevant prior art in over 130 subsequent United States Patent Applications, including Applications assigned to technology and business leaders such as Google, Inc., AT&T, FedEx, Qualcomm, Inc., Fujitsu, Ltd., United Parcel Services of America, American Airlines and NEC Corp.

37.  The '268 Patent was examined by Primary United States Patent Examiner Van T. Trieu.  During the examination of the '268 Patent, the United States Patent Examiner searched for prior art in the following US Classifications: G06Q 10/08 and G06Q 10/083.

38.  After conducting searches for prior art during the examination of the '268 Patent, the United States Patent Examiner identified and cited the following as the most relevant prior art references found during the searches: (i) US 5,959,568, 09/1999, Woolley; (ii) US 6,148,291, 1/2000, Radican; (iii) US 6,492,904, 12/2002, Richards; (iv) US 7,035,856, 04/2006, Morimoto; (v) US 10,181,109, 01/2019, Joao; and (vi) US 2002/0111819, 08/2002, Li.

39.  After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiner allowed all of the claims of the '268 Patent to issue.  In so doing, it is presumed that Examiner Trieu used his or her knowledge of the art when examining the claims.  *K/S Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014).  It is further presumed that Examiner Trieu has experience in the field of the invention, and that the Examiner properly acted in accordance with a person of ordinary skill.  *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002).

40.  The '268 Patent is a pioneering patent, and has been cited as relevant prior art in over 130 subsequent United States Patent Applications, including Applications assigned to technology and business leaders such as Google, Inc., AT&T, FedEx, Qualcomm, Inc., Fujitsu, Ltd., United Parcel Services of America, American Airlines and NEC Corp.

41.  The claims of the Transcend Patents were all properly issued, and are valid and enforceable for the respective terms of their statutory life through expiration, and are enforceable for purposes of seeking damages for past infringement even post-expiration.  *See, e.g., Genetics Institute, LLC v. Novartis Vaccines and Diagnostics, Inc.,* 655 F.3d 1291, 1299 (Fed. Cir. 2011) ("[A]n expired patent

is not viewed as having 'never existed.'  Much to the contrary, a patent does have value beyond its expiration date.  For example, an expired patent may form the basis of an action for past damages subject to the six-year limitation under 35 U.S.C. § 286") (internal citations omitted).

42.     The expiration dates of the Transcend Patents are at least the following: the '731 Patent expired on August 7, 2019 due to nonpayment of maintenance fees; the '920 Patent expires no earlier than April 27, 2022; the '029 Patent expires no earlier than November 1, 2023; the '109 Patent expires no earlier than January 22, 2022; and the '268 Patent expires no earlier than January 22, 2022.

## ACCUSED INSTRUMENTALITIES

43.     Upon information and belief, JBH sells, advertises, offers for sale, uses, or otherwise provides containers ("shipment conveyance device") for shipping and/or delivering goods, products, items, and/or other objects which are equipped with Orbcomm devices  ("Accused Instrumentalities") that infringe the Transcend Patents.

## COUNT I

## (Infringement of U.S. Patent No. 10,181,109)

44.     Plaintiff incorporates the above paragraphs by reference.

45.     JBH has been on actual notice of the '109 Patent at least as early as the date it received service of this Original Complaint.

46.     On information and belief, JBH owns and controls the operation of the Accused Instrumentalities and generates substantial financial revenues therefrom.

47.     Upon information and belief, JBH has directly infringed and continues to directly infringe at least claims 1, 8, 10, and 14 of the '109 Patent by making, using, importing, selling, and/or, offering for sale the Accused Instrumentalities.

48.   JBH, with knowledge of the '109 Patent, also infringes at least claims 1, 8, 10, and 14 of the '109 Patent by inducing others to infringe the '109 Patent.   In particular, JBH intends to induce its customers to infringe the '109 Patent by encouraging its customers to use the Accused Instrumentalities in a manner that results in infringement.

49.   JBH also induces others, including its customers, to infringe at least claims 1, 8, 10, and 14 of the '109 Patent by providing technical support for the use of the Accused Instrumentalities.

50.   Upon information and belief, JBH makes, uses, sells and offers for sale an apparatus, comprising, a shipment conveyance device, wherein the shipment conveyance device is a shipping container, a pallet, or a piece of luggage.   For example, JBH provides containers ("shipment conveyance device") for shipping and/or delivering goods, products, items, and/or other objects which are equipped with Orbcomm devices.   See Figures 5- below, which are screenshots of webpages associated with JBH.



Figure 5[5]

[5] Source, as visited on May 12, 2021:  https://www.jbhunt.com/blog/2017/02/28/fleet-tracking/

J.B. Hunt has chosen ORBCOMM Inc., a leading global provider of Machine-to-Machine and Internet of Things communication solutions, to equip its 90,000-plus intermodal and over-the-road (OTR) trailing fleets with end-to-end tracking and monitoring. ORBCOMM will provide J.B. Hunt a comprehensive telematics solution that gives visibility to the location and status for multiple classes of trailing equipment. Each unit will be equipped with a solar-rechargeable GPS tracking device and a full-length sensor to determine the presence or absence of cargo inside the trailing unit. This solution will increase operational efficiency, reduce cargo theft, and decrease unauthorized use of assets. "We've already identified numerous areas within our operation where we will see immediate benefits in efficiency," said Terry Matthews, executive vice president and president of J.B. Hunt's intermodal division. "End-to-end visibility to the entire supply chain is the new expectation, and as a technology leader in the industry, we are excited to provide this service to our customers." By fully equipping the nation's largest 53-foot trailing fleet with ORBCOMM's industry-leading products, J.B. Hunt will gain insight and control over every facet of its operation. The integration of real-time location and cargo status information into J.B. Hunt 360, the company's transportation management system, will help drive out operational inefficiencies while maximizing customer visibility into the life cycle of their orders. "We are pleased to have been selected by J.B. Hunt as

Figure 6[6]

utilization, and ROI benefits for a fleet of J.B. Hunt's size." J.B. Hunt will begin deploying ORBCOMM's solutions across their fleet immediately and will continue throughout 2017. About J.B. Hunt J.B. Hunt Transport

Figure 7[7]

51.    Upon information and belief, JBH provides a global positioning device, wherein the global positioning device is located in, on, or at, the shipment conveyance device, and further wherein the global positioning device determines a position or location of the shipment conveyance device. For example, JBH's shipping containers are fitted with Orbcomm devices which comprise a global positioning device to determine a position/location of the shipping container. Further, JBH provides

---

[6] Source, as visited on May 12, 2021:  https://www.jbhunt.com/blog/2017/02/28/fleet-tracking/

[7] Source, as visited on May 12, 2021:  https://www.jbhunt.com/blog/2017/02/28/fleet-tracking/

a mobile application and a desktop application ("Shipper 360") which is used by customers to track and trace their cargo.  See Figure 6 above. See also Figure 8 below, which is a screenshot of from Apple Inc.'s App Store showing the Shipper 360 application provided by JBH.



Figure 8[8]

52.    Upon information and belief, JBH provides a processor, wherein the processor generates a message in response to an occurrence of the event or in response to a request for information regarding the shipment conveyance device, wherein the request for information is automatically received by the receiver, wherein the message contains information regarding a position or location of the shipment conveyance device. For example, JBH's shipping containers are fitted with the Orbcomm devices ("processing device") which measure information related to shipping container including one or more of, but not limited to, the location of the shipping container, the temperature in the shipping

---

[8] Source, as visited on May 12, 2021: https://apps.apple.com/us/app/shipper-360-by-j-b-hunt/id1494163846#?platform=iphone

container, and the presence of cargo in the shipping container and therefore, JBH provides a processor which processes information regarding the shipment conveyance device. As a further example, JBH's shipping containers equipped with Orbcomm devices detect an event including one or more of, but not limited to, deviation in temperature and deviation in planned route and, in response to the detected event, send alerts ("message") containing information about the event to the customers of JBH. On information and belief, these alerts are viewed via a desktop application and/or a mobile application provided by JBH. Therefore, on information and belief, JBH provides a processor which generates a message in response to occurrence of an event and the message contains information regarding the position and location of the shipment conveyance device. As a further example, JBH's shipping containers, fitted with Orbcomm devices, measure information using sensors including one or more of, but not limited to, a GPS sensor, a temperature sensor and a sensor that detects the presence of cargo, and transmit information in the form of alerts to JBH's customers after a request for information is received by JBH automatically. Therefore, on information and belief, JBH provides a receiver which receives a request for information automatically. See Figures 6 and 8 above. See also Figures 9 and 10 below, which are screenshots of webpages associated with JBH.



Figure 9[9]



Figure 10[10]

53. Upon information and belief, JBH provides a transmitter, wherein the transmitter is located in, on, or at, the shipment conveyance device, and further wherein the transmitter transmits the message to a communication device associated with an owner of the shipment conveyance device, a receiver of the shipment conveyance device, or an individual authorized to receive the message. For example, JBH's shipping containers ("shipment conveyance device"), fitted with the Orbcomm devices, send information ("message") including one or more of, but not limited to, location, presence of cargo and temperature, to JBH's customers. As a result, the customers monitor their shipments present in the shipping containers using a computer or mobile device. Therefore, JBH provides a transmitter for transmitting a message to a communication device associated with an owner or an individual authorized to receive the message. See Figures 6 and 8-10 above.

54. Upon information and belief, JBH provides a sensor, wherein the sensor monitors or measures a temperature during a shipment or a transportation of the shipment conveyance device, a shock exerted on the shipment conveyance device, an impact exerted on the shipment conveyance device, or a force exerted on the shipment conveyance device. For example, JBH's shipping containers

---

[9] Source, as visited on May 12, 2021:  https://www.jbhunt.com/shipment-solutions/shipment-services/refrigerated

[10] Source, as visited on May 12, 2021:  https://www.jbhunt.com/shipment-solutions/self-service

equipped with Orbcomm devices include at least one or more of, but not limited to, a temperature sensor for measuring at least a temperature experienced by the shipping container during transportation. Therefore, JBH's shipping containers fitted with Orbcomm devices comprise sensors that monitor and measure at least one or more of, but not limited to, temperature, shock, impact and force experienced by the shipment conveyance device. See Figures 6 and 8-10 above.

55.    Upon information and belief, JBH also provides a message which contains information regarding a temperature during the shipment or the transportation, a change in a shipment or transportation temperature, or an impact or force exerted on the shipment conveyance device.  For example, JBH's shipping containers, fitted with Orbcomm devices, monitors at least a temperature in the shipping container and transmit this temperature information ("message") to JBH's customers. As a further example, JBH's shipping containers, fitted with Orbcomm devices, detects changes in the temperature in the shipping container and transmit an alert ("message") to JBH's customers if the change exceeds a predetermined threshold. Therefore, JBH provides a message which contains information regarding temperature of shipment. See Figures 9 and 10 above. See also Figure 11 below, which is a screenshot of a webpage associated with Orbcomm.



Figure 11[11]

56.   Upon information and belief, JBH further provides an apparatus wherein the event is a detection of a deviation from a pre-determined shipment or transportation route associated with a shipment or a transportation of or involving the shipment conveyance device.   For example, JBH's shipping containers equipped with Orbcomm devices send GPS location information and associated alerts. Therefore, on information and belief, JBH's shipping containers equipped with Orbcomm devices detect events related to deviation from a pre-determined transportation route. See Figures 6 and 8-10 above.

57.   Upon information and belief, JBH further provides an apparatus wherein the shipping container, the pallet, or the piece of luggage, is a refrigerated container, a heated container, or an insulated

---

[11] Source, as visited on May 12, 2021:  https://www.orbcomm.com/en/industries/transportation-and-distribution/cold-chain-monitoring

container.  For example, some of JBH's shipping containers are refrigerated containers. See Figure 9 above.

58.     To the extent JBH continues, and has continued, its infringing activities noted above in an infringing manner post-notice of the '109 Patent, such infringement is necessarily willful and deliberate.

59.     On information and belief, JBH has a policy or practice of not reviewing the patents of others. Further on information and belief, JBH instructs its employees to not review the patents of others for clearance or to assess infringement thereof.  As such, JBH has been willfully blind to the patent rights of Plaintiff.

60.     Each of JBH's aforesaid activities has been without authority and/or license from Plaintiff.

## COUNT II

### (Infringement of U.S. Patent No. 9,847,029)

61.     Plaintiff incorporates the above paragraphs by reference.

62.     JBH has been on actual notice of the '029 Patent at least as early as the date it received service of this Original Complaint.

63.     On information and belief, JBH owns and controls the operation of the Accused Instrumentalities and generates substantial financial revenues therefrom.

64.     Upon information and belief, JBH has directly infringed and continues to directly infringe at least Claims 2, 12, 15, and 19 of the '029 Patent by making, using, importing, selling, and/or, offering for sale the Accused Instrumentalities.

65.     JBH, with knowledge of the '029 Patent, also infringes at least Claims 2, 12, 15, and 19 of the '029 Patent by inducing others to infringe the '029 Patent.  In particular, JBH intends to induce its customers to infringe the '029 Patent by encouraging its customers to use the Accused Instrumentalities in a manner that results in infringement.

66.     JBH also induces others, including its customers, to infringe at least Claims 2, 12, 15, and 19 of the
'029 Patent by providing technical support for the use of the Accused Instrumentalities.

67.     As described above (*see* ¶ 50), and upon information and belief, JBH makes, uses, sells and offers
for sale an apparatus, comprising, a shipment conveyance device, wherein the shipment conveyance
device is a smart container, a pallet, or a piece of luggage.  For example, JBH provides containers
("shipment conveyance device") for shipping and/or delivering goods, products, items, and/or other
objects which are equipped with Orbcomm devices.

68.     As described above (*see* ¶ 51), and upon information and belief, JBH provides a global positioning
device, wherein the global positioning device is located in, on, or at, the shipment conveyance
device, and further wherein the global positioning device determines a position or location of the
shipment conveyance device.  For example, JBH's shipping containers are fitted with the Orbcomm
devices which comprise a global positioning device to determine a position/location of the shipping
container. Further, JBH provides a mobile application and a desktop application ("Shipper 360")
which is used by customers to track and trace their cargo.

69.     As described above (*see* ¶ 52), and upon information and belief, JBH also provides a processor,
wherein the processor processes information regarding the shipment conveyance device in response
to an occurrence of an event or in response to a request for information regarding the shipment
conveyance device, and further wherein the processor generates a message in response to the
occurrence of the event or in response to the request for information regarding the shipment
conveyance device.   For example, JBH's containers are fitted with the Orbcomm devices
("processing device") which measure information related to the shipping container including one or
more of, but not limited to, the location of the shipping container, the temperature in the shipping
container, and the presence of cargo in the shipping container and therefore, JBH provides a

processor which processes information regarding the shipment conveyance device. Further, JBH's containers, equipped with Orbcomm devices, detect an event including one or more of, but not limited to, deviation in temperature and deviation in planned route and, in response to the detected event, send alerts ("message") containing information about the event to the customers of JBH. On information and belief, these alerts are viewed via a desktop application and/or a mobile application provided by JBH. Therefore, on information and belief, JBH provides a processor which generates a message in response to occurrence of an event and the message contains information regarding the position and location of the shipment conveyance device.

70.     As described above (*see* ¶ 53), and upon information and belief, JBH provides a transmitter, wherein the transmitter is located in, on, or at, the shipment conveyance device, and further wherein the transmitter transmits the message to a communication device associated with an owner of the shipment conveyance device, a receiver of the shipment conveyance device, or an individual authorized to receive the message.  For example, JBH's shipping containers ("shipment conveyance device"), fitted with the Orbcomm devices, send information ("message") including one or more of, but not limited to, location, presence of cargo and temperature, to JBH's customers. As a result, the customers monitor their shipments present in the shipping containers using a computer or mobile device. Therefore, JBH provides a transmitter for transmitting a message to a communication device associated with an owner or an individual authorized to receive the message.

71.     As described above (*see* ¶ 54), and upon information and belief, Defendant provides a sensor, wherein the sensor monitors or measures a temperature during a shipment or a transportation of the shipment conveyance device, a shock exerted on the shipment conveyance device, an impact exerted on the shipment conveyance device, or a force exerted on the shipment conveyance device.  For example, JBH's shipping containers equipped with Orbcomm devices include at least one or more

of, but not limited to, a temperature sensor for measuring at least a temperature experienced by the shipping container during transportation. Therefore, JBH's shipping containers fitted with Orbcomm devices comprise sensors that monitor and measure at least one or more of, but not limited to, temperature, shock, impact and force experienced by the shipment conveyance device.

72.   As described above (*see* ¶ 55), and upon information and belief, JBH also provides a message which contains information regarding a temperature during the shipment or the transportation, a change in a shipment or transportation temperature, or an impact or force exerted on the shipment conveyance device.  For example, JBH's shipping containers, fitted with Orbcomm devices, monitors at least a temperature in the shipping container and transmit this temperature information ("message") to JBH's customers. As a further example, JBH's shipping containers, fitted with Orbcomm devices, detects changes in the temperature in the shipping container and transmit an alert ("message") to JBH's customers if the change exceeds a predetermined threshold. Therefore, JBH provides a message which contains information regarding temperature of shipment.

73.   As described above (*see* ¶ 56), and upon information and belief, JBH further provides an apparatus wherein the event is a detection of a deviation from a pre-determined shipment or transportation route associated with a shipment or a transportation of or involving the shipment conveyance device. For example, JBH's shipping containers equipped with Orbcomm devices send GPS location information and associated alerts. Therefore, on information and belief, JBH's shipping containers equipped with Orbcomm devices detect events related to deviation from a pre-determined transportation route.

74.   As described above (*see* ¶ 57), and upon information and belief, JBH further provides an apparatus wherein the shipping container, the pallet, or the piece of luggage, is a refrigerated container, a

heated container, or an insulated container.  For example, some of JBH's shipping containers are refrigerated containers.

75.    To the extent JBH continues, and has continued, its infringing activities noted above in an infringing manner post-notice of the '029 Patent, such infringement is necessarily willful and deliberate.

76.    On information and belief, JBH has a policy or practice of not reviewing the patents of others. Further on information and belief, JBH instructs its employees to not review the patents of others for clearance or to assess infringement thereof.  As such, JBH has been willfully blind to the patent rights of Plaintiff.

77.    Each of JBH's aforesaid activities has been without authority and/or license from Plaintiff.

## COUNT III

### (Infringement of U.S. Patent No. 7,482,920)

78.    Plaintiff incorporates the above paragraphs by reference.

79.    JBH has been on actual notice of the '920 Patent at least as early as the date it received service of this Original Complaint.

80.    On information and belief, JBH owns and controls the operation of the Accused Instrumentalities and generates substantial financial revenues therefrom.

81.    Upon information and belief, JBH has directly infringed and continue to directly infringe at least Claims 1, 5, 9, 11, and 16 of the '920 Patent by making, using, importing, selling, and/or, offering for sale the Accused Instrumentalities.

82.    JBH, with knowledge of the '920 Patent, also infringes at least Claims 1, 5, 9, 11, and 16 of the '920 Patent by inducing others to infringe the '920 Patent.  In particular, JBH intends to induce its customers to infringe the '920 Patent by encouraging its customers to use the Accused Instrumentalities in a manner that results in infringement.

83.  JBH also induces others, including its customers, to infringe at least Claims 1, 5, 9, 11, and 16 of the '920 Patent by providing technical support for the use of the Accused Instrumentalities.

84.  As described above (*see* ¶ 50), and upon information and belief, JBH makes, uses, sells and offers for sale an apparatus, comprising, a shipment conveyance device, wherein the shipment conveyance device is a smart container, a pallet, or a piece of luggage.  For example, JBH provides containers ("shipment conveyance device") for shipping and/or delivering goods, products, items, and/or other objects which are equipped with Orbcomm devices.

85.  Upon information and belief, JBH provides a memory device, wherein the memory device is located in, on, or at, the shipment conveyance device, wherein the memory device stores information regarding a description of a good, product, or item, being shipped or transported via or which is contained in or on the shipment conveyance device, and origination information, sender information, shipper information, destination information, receiver information, handling instruction information, delivery instruction information, invoice information, packing slip information, delivery time information, or payment instruction information, regarding the shipment conveyance device. For example, JBH's shipping containers are fitted with the Orbcomm devices which comprise sensors including one or more of, but not limited to, a GPS sensor, a temperature sensor, and a sensor that determines the presence of cargo in the shipping container ("shipment conveyance device"). As a further example, and on information and belief, JBH's shipping containers equipped with Orbcomm devices store at least an identification of JBH (since it communicates the position of the container and measurements from the sensors), and therefore JBH provides a memory device which stores at least one or more of origination information, sender information, and shipper information regarding the shipment conveyance device. As a further example, JBH's shipping containers equipped with Orbcomm devices store at least an identification of JBH's container (since it communicates the

position of the container and measurements from the sensors), and therefore JBH provides a memory device which stores at least one or more of origination information, sender information, and shipper information regarding the shipment conveyance device. As a further example, JBH's shipping containers equipped with Orbcomm devices store at least an identification of JBH's customer (since it communicates the position of the container and measurements from the sensors to JBH (who may have multiple customers availing JBH's services at any given time) and JBH must correlate the information to the particular customer in order to provide updates to the customer), and therefore JBH provides a memory device which stores at least one or more of origination information, sender information, shipper information, destination information and receiver information regarding the shipment conveyance device. See Figures 6 and 8-10 above.

86.   As described above (*see* ¶ 51), and upon information and belief, JBH provides a global positioning device, wherein the global positioning device is located in, on, or at, the shipment conveyance device, and further wherein the global positioning device determines a position or location of the shipment conveyance device.  For example, JBH's shipping containers are fitted with Orbcomm devices which comprise a global positioning device to determine a position/location of the shipping container. Further, JBH provides a mobile application and a desktop application ("Shipper 360") which is used by customers to track and trace their cargo.

87.   As described above (*see* ¶ 52), and upon information and belief, JBH also provides a processing device, wherein the processing device processes information regarding the shipment conveyance device in response to an occurrence of an event or in response to a request for information regarding the shipment conveyance device, wherein the processing device generates a message containing information regarding the position or location of the shipment conveyance device and information regarding the occurrence of an event, a status of a shipment or a transportation of or involving the

shipment conveyance device, a shipment or transportation temperature, or an impact or force on the shipment conveyance device.  For example, JBH's shipping containers are fitted with the Orbcomm devices ("processing device") which measure information related to shipping container including one or more of, but not limited to, the location of the shipping container, the temperature in the shipping container, and the presence of cargo in the shipping container and therefore, JBH provides a processor which processes information regarding the shipment conveyance device. As a further example, JBH's shipping containers equipped with Orbcomm devices detect an event including one or more of, but not limited to, deviation in temperature and deviation in planned route and, in response to the detected event, send alerts ("message") containing information about the event to the customers of JBH. On information and belief, these alerts are viewed via a computer application and/or a mobile application provided by JBH. Therefore, on information and belief, JBH provides a processor which generates a message in response to occurrence of an event and the message contains information regarding the position and location of the shipment conveyance device. As a further example, JBH's shipping containers, fitted with Orbcomm devices, measure information using sensors including one or more of, but not limited to, a GPS sensor, a temperature sensor and a sensor that detects the presence of cargo, and transmit information in the form of alerts to JBH's customers after a request for information is received by JBH automatically. Therefore, on information and belief, JBH provides a receiver which receives a request for information automatically.

88. As described above (*see* ¶ 53), and upon information and belief, JBH provides a transmitter, wherein the transmitter is located in, on, or at, the shipment conveyance device, wherein the transmitter transmits the message to a communication device associated with an individual or entity, a sender of the shipment conveyance device, a receiver of the shipment conveyance device, a carrier of the shipment conveyance device, or an individual or entity authorized to receive information regarding

the shipment conveyance device or information regarding a shipment or a transportation of or involving the shipment conveyance device.  For example, JBH's shipping containers ("shipment conveyance device"), fitted with the Orbcomm devices, send information ("message") including one or more of, but not limited to, location, presence of cargo and temperature, to JBH's customers. As a result, the customers monitor their shipments present in the shipping containers using a computer or mobile device. Therefore, JBH provides a transmitter for transmitting a message to a communication device associated with at least one of an individual, entity, sender of shipment conveyance device, receiver of shipment conveyance device and carrier of shipment conveyance device.

89.     As described above (*see* ¶ 54), and upon information and belief, JBH provides a sensor, wherein the sensor monitors or measures a temperature during a shipment or the transportation of the shipment conveyance device, a shock exerted on the shipment conveyance device, an impact exerted on the shipment conveyance device, or a force exerted on the shipment conveyance device.  For example, JBH's shipping containers equipped with Orbcomm devices include at least one or more of, but not limited to, a temperature sensor for measuring at least a temperature experienced by the shipping container during transportation. Therefore, JBH's shipping containers fitted with Orbcomm devices comprise sensors that monitor and measure at least one or more of, but not limited to, temperature, shock, impact and force experienced by the shipment conveyance device.

90.     As described above (*see* ¶ 55), and upon information and belief, JBH also provides a message which contains information regarding a temperature during the shipment or the transportation, a change in a shipment or transportation temperature, or an impact or force exerted on the shipment conveyance device.  For example, JBH's shipping containers, fitted with Orbcomm devices, monitors at least a temperature in the shipping container and transmit this temperature information ("message") to JBH's customers. As a further example, JBH's shipping containers, fitted with Orbcomm devices,

detects changes in the temperature in the shipping container and transmit an alert ("message") to JBH's customers if the change exceeds a predetermined threshold. Therefore, JBH provides a message which contains information regarding temperature of shipment.

91.     As described above (*see* ¶ 56), and upon information and belief, JBH further provides an apparatus wherein the event is a detection of a deviation from a pre-determined shipment or transportation route associated with the shipment or a transportation of or involving the shipment conveyance device.  For example, JBH's shipping containers equipped with Orbcomm devices send GPS location information and associated alerts. Therefore, on information and belief, JBH's shipping containers equipped with Orbcomm devices detect events related to deviation from a pre-determined transportation route.

92.     Upon information and belief, JBH further provides an apparatus wherein the event is a detection of a shipment or transportation temperature which deviates from a shipment or transportation temperature requirement. For example, JBH's shipping containers equipped with Orbcomm devices transmit alerts to JBH's customers when the temperature in the container is detected beyond a threshold, and therefore, detects events including, but not limited to, deviation in shipment temperature. See Figures 9-11 above.

93.     As described above (*see* ¶ 57), and upon information and belief, JBH further provides an apparatus wherein the shipping container, the pallet, or the piece of luggage, is a refrigerated container, a heated container, or an insulated container.  For example, some of JBH's shipping containers are refrigerated containers.

94.     To the extent JBH continues, and has continued, its infringing activities noted above in an infringing manner post-notice of the '920 Patent, such infringement is necessarily willful and deliberate.

95.   On information and belief, JBH has a policy or practice of not reviewing the patents of others. Further on information and belief, JBH instructs its employees to not review the patents of others for clearance or to assess infringement thereof.  As such, JBH has been willfully blind to the patent rights of Plaintiff.

96.   Each of JBH's aforesaid activities has been without authority and/or license from Plaintiff.

**COUNT IV**

**(Infringement of U.S. Patent No. 10,796,268)**

97.   Plaintiff incorporates the above paragraphs by reference.

98.   JBH has been on actual notice of the '268 Patent at least as early as the date it received service of this Original Complaint.

99.   On information and belief, JBH owns and controls the operation of the Accused Instrumentalities and generates substantial financial revenues therefrom.

100.  Upon information and belief, JBH has directly infringed and continue to directly infringe at least Claims 1, 8 , 10 and 12 of the '268 Patent by making, using, importing, selling, and/or, offering for sale the Accused Instrumentalities.

101.  JBH, with knowledge of the '268 Patent, also infringes at least Claims 1, 8 , 10 and 12 of the '268 Patent by inducing others to infringe the '268 Patent.  In particular, JBH intends to induce its customers to infringe the '268 Patent by encouraging its customers to use the Accused Instrumentalities in a manner that results in infringement.

102.  JBH also induces others, including its customers, to infringe at least Claims 1, 8 , 10 and 12 of the '268 Patent by providing technical support for the use of the Accused Instrumentalities.

103.  As described above (*see* ¶ 50), and upon information and belief, JBH makes, uses, sells and offers for sale an apparatus, comprising, a shipment conveyance device, wherein the shipment conveyance

device is a shipping container, a pallet, or a piece of luggage.  For example, JBH provides containers ("shipment conveyance device") for shipping and/or delivering goods, products, items, and/or other objects which are equipped with Orbcomm devices.

104.   As described above (*see* ¶ 51), and upon information and belief, JBH provides a global positioning device, wherein the global positioning device is located in, on, or at, the shipment conveyance device, and further wherein the global positioning device determines a position or location of the shipment conveyance device.  For example, JBH's shipping containers are fitted with Orbcomm devices which comprise a global positioning device to determine a position/location of the shipping container. Further, JBH provides a mobile application and a desktop application ("Shipper 360") which is used by customers to track and trace their cargo.

105.   As described above (*see* ¶ 52), and upon information and belief, JBH also provides a processor, wherein the processor generates a message in response to an occurrence of an event, or in response to a request for information regarding the shipment conveyance device which is automatically received by a receiver, wherein the message contains information regarding a shipment of the shipment conveyance device.  For example, JBH's shipping containers are fitted with the Orbcomm devices ("processing device") which measure information related to shipping container including one or more of, but not limited to, the location of the shipping container, the temperature in the shipping container, and the presence of cargo in the shipping container and therefore, JBH provides a processor which processes information regarding the shipment conveyance device. As a further example, JBH's shipping containers equipped with Orbcomm devices detect an event including one or more of, but not limited to, deviation in temperature and deviation in planned route and, in response to the detected event, send alerts ("message") containing information about the event to the customers of JBH. On information and belief, these alerts are viewed via a computer application

and/or a mobile application provided by JBH. Therefore, on information and belief, JBH provides a processor which generates a message in response to occurrence of an event and the message contains information regarding the position and location of the shipment conveyance device. As a further example, JBH's shipping containers, fitted with Orbcomm devices, measure information using sensors including one or more of, but not limited to, a GPS sensor, a temperature sensor and a sensor that detects the presence of cargo, and transmit information in the form of alerts to JBH's customers after a request for information is received by JBH automatically. Therefore, on information and belief, JBH provides a receiver which receives a request for information automatically.

106.    As described above (*see* ¶ 53), and upon information and belief, JBH provides a transmitter, wherein the transmitter is located in, on, or at, the shipment conveyance device, and further wherein the transmitter transmits the message to a communication device associated with an owner of the shipment conveyance device or an individual authorized to receive the message.  For example, JBH's shipping containers ("shipment conveyance device"), fitted with the Orbcomm devices, send information ("message") including one or more of, but not limited to, location, presence of cargo and temperature, to JBH's customers. As a result, the customers monitor their shipments present in the shipping containers using a computer or mobile device. Therefore, JBH provides a transmitter for transmitting a message to a communication device associated with an owner or an individual authorized to receive the message.

107.    As described above (*see* ¶ 54), and upon information and belief, JBH provides a sensor, wherein the sensor monitors or measures a temperature during a shipment or a transportation of the shipment conveyance device, a shock exerted on the shipment conveyance device, an impact exerted on the shipment conveyance device, or a force exerted on the shipment conveyance device.  For example, JBH's shipping containers equipped with Orbcomm devices include at least one or more of, but not

limited to, a temperature sensor for measuring at least a temperature experienced by the shipping container during transportation. Therefore, JBH's shipping containers fitted with Orbcomm devices comprise sensors that monitor and measure at least one or more of, but not limited to, temperature, shock, impact and force experienced by the shipment conveyance device.

108.  As described above (*see* ¶ 55), and upon information and belief, JBH also provides a message which contains information regarding a temperature during the shipment or the transportation, a change in a shipment or transportation temperature, or an impact or force exerted on the shipment conveyance device.  For example, JBH's shipping containers, fitted with Orbcomm devices, monitors at least a temperature in the shipping container and transmit this temperature information ("message") to JBH's customers. As a further example, JBH's shipping containers, fitted with Orbcomm devices, detects changes in the temperature in the shipping container and transmit an alert ("message") to JBH's customers if the change exceeds a predetermined threshold. Therefore, JBH provides a message which contains information regarding temperature of shipment.

109.  As described above (*see* ¶ 56), and upon information and belief, JBH further provides an apparatus wherein the event is a detection of a deviation from a pre-determined shipment or transportation route associated with a shipment or a transportation of or involving the shipment conveyance device. For example, JBH's shipping containers equipped with Orbcomm devices send GPS location information and associated alerts. Therefore, on information and belief, JBH's shipping containers equipped with Orbcomm devices detect events related to deviation from a pre-determined transportation route.

110.  As described above (*see* ¶ 57), and upon information and belief, JBH further provides an apparatus wherein the shipping container, the pallet, or the piece of luggage, is a refrigerated container, a

heated container, or an insulated container.  For example, some of JBH's shipping containers are refrigerated containers.

111.   To the extent JBH continues, and has continued, its infringing activities noted above in an infringing manner post-notice of the '268 Patent, such infringement is necessarily willful and deliberate.

112.   On information and belief, JBH has a policy or practice of not reviewing the patents of others. Further on information and belief, JBH instructs its employees to not review the patents of others for clearance or to assess infringement thereof.  As such, JBH has been willfully blind to the patent rights of Plaintiff.

113.   Each of JBH's aforesaid activities has been without authority and/or license from Plaintiff.

## COUNT V

### (Infringement of U.S. Patent No. 7,253,731)

114.   Plaintiff incorporates the above paragraphs by reference.

115.   JBH has been on actual notice of the '731 Patent at least as early as the date it received service of this Original Complaint.

116.   On information and belief, JBH owns and controls the operation of the Accused Instrumentalities and generates substantial financial revenues therefrom.

117.   Upon information and belief, JBH has directly infringed and continue to directly infringe at least Claims 1, 5, 9, 11, and 16 of the '731 Patent by making, using, importing, selling, and/or, offering for sale the Accused Instrumentalities.

118.   JBH, with knowledge of the '731 Patent, also infringes at least Claims 1, 5, 9, 11, and 16 of the '731 Patent by inducing others to infringe the '731 Patent.  In particular, JBH intends to induce its customers to infringe the '731 Patent by encouraging its customers to use the Accused Instrumentalities in a manner that results in infringement.

119.   JBH also induces others, including its customers, to infringe at least Claims 1, 5, 9, 11, and 16 of the '268 Patent by providing technical support for the use of the Accused Instrumentalities.

120.   As described above (*see* ¶ 50), and upon information and belief, JBH makes, uses, sells and offers for sale an apparatus, comprising, a shipment conveyance device, wherein the shipment conveyance device is associated with a shipment, and further wherein the shipment conveyance device is at least one of a shipping container, a pallet, and a tote.  For example, JBH provides containers ("shipment conveyance device") for shipping and/or delivering goods, products, items, and/or other objects which are equipped with Orbcomm devices.

121.   As described above (*see* ¶ 85), and upon information and belief, JBH provides a memory device, wherein the memory device is located in, on, or at, the shipment conveyance device, wherein information regarding the shipment is stored in the memory device, and further wherein the information regarding the shipment includes a description of a good, product, or item, being shipped or transported via the shipment conveyance device, and at least one of origination information, sender information, shipper information, destination information, receiver information, handling instruction information, delivery instruction information, invoice information, packing slip information, delivery time information, and payment instruction information, regarding the shipment. For example, JBH's shipping containers are fitted with the Orbcomm devices which comprise sensors including one or more of, but not limited to, a GPS sensor, a temperature sensor, and a sensor that determines the presence of cargo in the shipping container ("shipment conveyance device"). As a further example, and on information and belief, JBH's shipping containers equipped with Orbcomm devices store at least an identification of JBH (since it communicates the position of the container and measurements from the sensors), and therefore JBH provides a memory device which stores at least one or more of origination information, sender information, and shipper

information regarding the shipment conveyance device. As a further example, JBH's shipping containers equipped with Orbcomm devices store at least an identification of JBH's container (since it communicates the position of the container and measurements from the sensors), and therefore JBH provides a memory device which stores at least one or more of origination information, sender information, and shipper information regarding the shipment conveyance device. As a further example, JBH's shipping containers equipped with Orbcomm devices store at least an identification of JBH's customer (since it communicates the position of the container and measurements from the sensors to JBH (who may have multiple customers availing JBH's services at any given time) and JBH must correlate the information to the particular customer in order to provide updates to the customer), and therefore JBH provides a memory device which stores at least one or more of origination information, sender information, shipper information, destination information and receiver information regarding the shipment conveyance device.

122. As described above (*see* ¶ 51), and upon information and belief, JBH provides a global positioning device, wherein the global positioning device is located in, on, or at, the shipment conveyance device, and further wherein the global positioning device determines a position or location of the shipment conveyance device.  For example, JBH's shipping containers are fitted with Orbcomm devices which comprise a global positioning device to determine a position/location of the shipping container. Further, JBH provides a mobile application and a desktop application ("Shipper 360") which is used by customers to track and trace their cargo.

123. As described above (*see* ¶¶ 52, 54 and 55), and upon information and belief, JBH also provides a processing device, wherein the processing device processes at least one of information regarding the shipment and information regarding the shipment conveyance device in response to an occurrence of an event or in response to a request for information regarding the shipment or the shipment

conveyance device, wherein the processing device generates a message containing information regarding the position or location of the shipment or the shipment conveyance device and information regarding at least one of the occurrence of an event, a status of the shipment, a shipment temperature, and an impact or force on the shipment conveyance device.  For example, JBH's shipping containers are fitted with the Orbcomm devices ("processing device") which measure information related to shipping container including one or more of, but not limited to, the location of the shipping container, the temperature in the shipping container, and the presence of cargo in the shipping container and therefore, JBH provides a processor which processes information regarding the shipment conveyance device. As a further example, JBH's shipping containers equipped with Orbcomm devices detect an event including one or more of, but not limited to, deviation in temperature and deviation in planned route and, in response to the detected event, send alerts ("message") containing information about the event to the customers of JBH. On information and belief, these alerts are viewed via a computer application and/or a mobile application provided by JBH. Therefore, on information and belief, JBH provides a processor which generates a message in response to occurrence of an event and the message contains information regarding the position and location of the shipment conveyance device. As a further example, JBH's shipping containers, fitted with Orbcomm devices, measure information using sensors including one or more of, but not limited to, a GPS sensor, a temperature sensor and a sensor that detects the presence of cargo, and transmit information in the form of alerts to JBH's customers after a request for information is received by JBH automatically. Therefore, on information and belief, JBH provides a receiver which receives a request for information automatically. As a further example, JBH's shipping containers equipped with Orbcomm devices include at least one or more of, but not limited to, a temperature sensor for measuring at least a temperature experienced by the shipping container during transportation.

Therefore, JBH's shipping containers fitted with Orbcomm devices comprise sensors that monitor and measure at least one or more of, but not limited to, temperature, shock, impact and force experienced by the shipment conveyance device. As a further example, JBH's shipping containers, fitted with Orbcomm devices, monitors at least a temperature in the shipping container and transmit this temperature information ("message") to JBH's customers. As a further example, JBH's shipping containers, fitted with Orbcomm devices, detects changes in the temperature in the shipping container and transmit an alert ("message") to JBH's customers if the change exceeds a predetermined threshold. Therefore, JBH provides a message which contains information regarding temperature of shipment.

124. As described above (*see* ¶ 53), and upon information and belief, JBH provides a transmitter, wherein the transmitter is located in, on, or at, the shipment conveyance device, and further wherein the transmitter transmits the message to a communication device associated with at least one of an individual or entity, a sender of the shipment, a receiver of the shipment, a carrier of the shipment, and an individual or entity authorized to receive information regarding the shipment or the shipment conveyance device. For example, JBH's shipping containers ("shipment conveyance device"), fitted with the Orbcomm devices, send information ("message") including one or more of, but not limited to, location, presence of cargo and temperature, to JBH's customers. As a result, the customers monitor their shipments present in the shipping containers using a computer or mobile device. Therefore, JBH provides a transmitter for transmitting a message to a communication device associated with an owner or an individual authorized to receive the message.

125. As described above (*see* ¶ 54), and upon information and belief, JBH provides a sensor, wherein the sensor monitors or measures at least one of a temperature during shipment, a shock exerted on the shipment conveyance device, an impact exerted on the shipment conveyance device, and a force

exerted on the shipment conveyance device.  For example, JBH's shipping containers equipped with Orbcomm devices include at least one or more of, but not limited to, a temperature sensor for measuring at least a temperature experienced by the shipping container during transportation. Therefore, JBH's shipping containers fitted with Orbcomm devices comprise sensors that monitor and measure at least one or more of, but not limited to, temperature, shock, impact and force experienced by the shipment conveyance device.

126.   As described above (*see* ¶ 55), and upon information and belief, JBH also provides a message which contains information regarding at least one of a temperature of the shipment, a change in a shipment temperature, and an impact or force exerted on the shipment conveyance device.  For example, JBH's shipping containers, fitted with Orbcomm devices, monitors at least a temperature in the shipping container and transmit this temperature information ("message") to JBH's customers. As a further example, JBH's shipping containers, fitted with Orbcomm devices, detects changes in the temperature in the shipping container and transmit an alert ("message") to JBH's customers if the change exceeds a predetermined threshold. Therefore, JBH provides a message which contains information regarding temperature of shipment.

127.   As described above (*see* ¶ 56), and upon information and belief, JBH further provides an apparatus wherein the event is a detection of a deviation from a pre-determined transportation route associated with the shipment.  For example, JBH's shipping containers equipped with Orbcomm devices send GPS location information and associated alerts. Therefore, on information and belief, JBH's shipping containers equipped with Orbcomm devices detect events related to deviation from a pre-determined transportation route.

128.   As described above (*see* ¶ 92), and upon information and belief, JBH further provides an apparatus wherein the event is a detection of a shipment temperature which deviates from a shipment

temperature requirement. For example, JBH's shipping containers equipped with Orbcomm devices transmit alerts to JBH's customers when the temperature in the container is detected beyond a threshold, and therefore, detects events including, but not limited to, deviation in shipment temperature.

129.   As described above (*see* ¶ 57), and upon information and belief, JBH further provides an apparatus wherein the shipping container, the pallet, or the piece of luggage, is a refrigerated container, a heated container, or an insulated container.  For example, some of JBH's shipping containers are refrigerated containers.

130.   To the extent JBH continues, and has continued, its infringing activities noted above in an infringing manner post-notice of the '731 Patent, such infringement is necessarily willful and deliberate.

131.   On information and belief, JBH has a policy or practice of not reviewing the patents of others. Further on information and belief, JBH instructs its employees to not review the patents of others for clearance or to assess infringement thereof.  As such, JBH has been willfully blind to the patent rights of Plaintiff.

132.   Each of JBH's aforesaid activities has been without authority and/or license from Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, Transcend respectfully requests the Court enter judgment against JBH:

1.   Declaring that JBH has infringed each of the Transcend Patents;

2.   Declaring that JBH's infringement of each of the Transcend Patents has been willful and deliberate;

3.   Awarding Transcend compensatory damages as a result of JBH's infringement of the Transcend Patents;

4.    Awarding Transcend treble damages and pre-judgment interest under 35 U.S.C. § 284 as a result of JBH's willful and deliberate infringement of the Transcend Patents;

5.    Granting a permanent injunction pursuant to 35 U.S.C. § 283, enjoining JBH from further acts of infringement with respect to the Transcend Patents;

6.    Awarding Transcend its costs, attorneys' fees, expenses, and interest;

7.    Awarding Transcend ongoing post-trial royalties; and

8.    Granting Transcend such further relief as the Court finds appropriate.


## JURY DEMAND

Transcend demands trial by jury, under Fed. R. Civ. P. 38.


Dated:  May 13, 2021                                Respectfully Submitted

                                                    */s/ René A. Vazquez*
                                                    René A. Vazquez
                                                    Virginia Bar No. 41988
                                                    rvazquez@ghiplaw.com
                                                    Randall T. Garteiser
                                                    Texas Bar No. 24038912
                                                    rgarteiser@ghiplaw.com
                                                    M. Scott Fuller
                                                    Texas Bar No. 24036607
                                                    sfuller@ghiplaw.com

                                                    **GARTEISER HONEA, PLLC**
                                                    119 W. Ferguson Street
                                                    Tyler, Texas 75702
                                                    Telephone: (903) 705-7420
                                                    Facsimile: (903) 405-3999

                                                    **ATTORNEYS FOR
                                                    TRANSCEND LLC**